UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

LAWRENCE ALAN HABERMAN,

        Plaintiff,                      Case No. 1:14-cv-88

v.                                         Honorable Janet T. Neff

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

        Defendant.
_____/

## **OPINION**

This is a civil action brought by a federal prisoner. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Lawrence Alan Haberman presently is incarcerated at the Federal Correctional Institute (FCI) in Marianna, Florida. Plaintiff sues Jackson National Life Insurance Company, a Michigan corporation, for breach of fiduciary duty. The basis for jurisdiction in this Court is diversity of citizenship under 28 U.S.C. § 1332.

Plaintiff alleges that on February 8, 2000 he contracted with Defendant to open an annuity account. On November 15, 2007, Defendant received a grand jury subpoena issued by the clerk of the United States District Court for the Northern District of Texas. The subpoena was sent by an Assistant United States Attorney from the Northern District of Texas. The subpoena sought production of "the contract history, purged diary, correspondence, and telephone recordings" pertaining to Plaintiff's annuity account. (Compl., docket #1, Page ID#4.) On December 6, 2007, Defendant responded to the grand jury subpoena and produced the aforementioned records to a member of the Drug Enforcement Administration (DEA).

Sometime later, Defendant received, via facsimile, a seizure warrant from the DEA which demanded the full monetary value of Plaintiff's annuity account. On December 3, 2007, Defendant responded to the seizure warrant and sent the DEA a check in the amount of $87,100.77, the full value of Plaintiff's annuity at that time.

Plaintiff alleges that Defendant violated various sections of Title 15, Chapter 2D regarding investment companies and advisers by responding to and relinquishing funds in connection with an unlawful subpoena and seizure warrant. Plaintiff contends that Defendant should not have complied with the subpoena because it was not legally valid as it originated in Texas, but was served in Michigan via facsimile. Likewise, Plaintiff contends that Defendant should not have

complied with the seizure warrant because it was transmitted by facsimile. Finally, Plaintiff contends that Defendant should not have complied with either the subpoena or the seizure warrant because at the time Defendant complied, Plaintiff had not been charged with, or convicted of, a crime but was merely in police detention.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. Subpoena

The basis of Plaintiff's claim is that the subpoena that Defendant responded to violated FED. R. CIV. P. 45(b)(2), thus making the subpoena invalid. Plaintiff contends that because Defendant is in Lansing, Michigan, the subpoena issued by the Northern District of Texas, could only lawfully be served within the state of Texas or within 100 miles of the place specified for the production of documents, which was Fort Worth, Texas. Plaintiff then reasons that without valid lawful justification, Defendant released "the contract history, purged diary, correspondence, and telephone recordings" pertaining to Plaintiff's annuity account in violation of 15 U.S.C. § 80b-4a[1] which provides that:

> Every investment adviser subject to section 80b-4 of this title shall establish, maintain, and enforce written policies and procedures reasonably designed, taking into consideration the nature of such investment adviser's business, to prevent the misuse in violation of this chapter or the Securities Exchange Act of 1934 [15 U.S.C.A. § 78a *et seq*], or the rules or regulations thereunder, of material, nonpublic information by such investment adviser or any person associated with such investment adviser. The Commission, as it deems necessary or appropriate in the public interest or for the protection of investors, shall adopt rules or regulations to require specific policies or procedures reasonably designed to prevent misuse in violation of this chapter or the Securities Exchange Act of 1934 [15 U.S.C.A. § 78a *et seq*.], (or the rules or regulations thereunder) of material, nonpublic information.

Additionally, Plaintiff alleges that Defendant's allegedly unlawful release of his annuity information violated 15 U.S.C. § 80b-6, which provides that:

---

[1] Plaintiff alleges that Title 15, Chapter 2D regarding investment companies and advisers applies in this case because Defendant qualifies as an investment company pursuant to 15 U.S.C. § 80a-3. The Court will assume, without deciding, that Defendant is a covered investment company.

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; or
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

Further, Plaintiff alleges that Defendant's release of his annuity information violated

15 U.S.C. § 80b-18b, which states:

> An investment adviser registered under this subchapter shall take such steps to safeguard client assets over which such adviser has custody, including, without limitation, verification of such assets by an independent public accountant, as the Commission may, by rule, prescribe.

Lastly, Plaintiff alleges that Defendant's release of his annuity information violated

15 U.S.C. § 6801, which states:

> (a) Privacy obligation policy
>
> It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

> (b) Financial institutions safeguards
>
> In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards--
>
> > (1) to insure the security and confidentiality of customer records and information;
> >
> > (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
> >
> > (3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

Plaintiff's claims fail because none of the statutes that he alleges Defendant violated allow for a private right of action for money damages.

The United States Supreme Court long ago held that "there exists a limited private remedy under the Investment Advisers Act of 1940 [15 U.S.C. §80b-1 *et seq.*] to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979).

> The *Transamerica Mortgage* Court considered whether a client could sue his investment adviser for violating §§ 206 and 215 of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 *et seq.*). Section 206 of that Act proscribes fraudulent conduct with a client (15 U.S.C. § 80b-6), and § 215 provides that contracts made in violation of the Act are void. 15 U.S.C. § 80b-15. The Court agreed with the plaintiff that these sections established a 'federal fiduciary standard' governing the conduct of investment advisers and was intended to benefit the advisers' clients. *Transamerica Mortgage, supra,* 444 U.S. at 17, 100 S. Ct. at 246. The Act and its legislative history, however, shed no light on the subject of private rights of action. The Court then proceeded to analyze the two sections separately. As to § 215, which voids fraudulent contracts, the Court observed that there must of necessity be a forum to litigate the voidness issue; therefore, the section implicitly created a private right of action for rescission, injunction, or restitution. *Id.* at 19, 100

> S. Ct. at 247.
>
> Section 206, proscribing the employment of 'any device, scheme or artifice to defraud,' was a different matter. The Court observed that 'it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' *Id.* Congress had provided several means of enforcing § 206, including § 217 (criminal prosecution for violating § 206), § 209 (SEC compliance action), and § 203 (SEC administrative sanctions). From these remedies, the Court drew the inference that no private remedy had been intended for violations of § 206: 'In view of these express provisions, it is highly improbable that 'Congress absent-mindedly forgot to mention an intended private action.' ' *Transamerica Mortgage, supra,* 444 U.S. at 20, 100 S. Ct. at 247, quoting *Cannon, supra,* 441 U.S. at 742, 99 S. Ct. at 1981 (Powell, J. dissenting). *Accord Touche Ross, supra,* 442 U.S. at 574, 99 S. Ct. at 2488 (where Congress has provided an explicit remedy, the Court is reluctant to imply a 'significantly broader' remedy).

*In re Fortune Sys. Sec. Litig.*, 604 F. Supp. 150, 154-55 (N.D. Cal. 1984).

With respect to 15 U.S.C. § 6801, courts considering the issue of whether § 6801 authorizes a private right of action have consistently held that it does not. *See e.g., Wood v. Greenberry Fin. Servs., Inc.*, 907 F. Supp. 2d 1165, 1186 (D. Haw. 2012) (holding that the Gramm-Leach-Biley Act (GLBA) 15 U.S.C. §§ 6801 *et seq.*, does not provide for a private right of action); *Abdelfattah v. U.S. Dept. of Homeland Sec.*, 893 F. Supp. 2d 75, 83 (D.D.C. 2012) (noting that no private right of action existed for an alleged violation of GLBA prohibiting financial institutions from disclosing nonpublic personal information).

Accordingly, because Plaintiff cannot bring a private right of action for money damages in connection with any of the provisions of Title 15 upon which he sues, Plaintiff's claims must be dismissed.[2]

---

[2] It bears noting that contrary to Plaintiff's assertion, Fed. R. Crim. P. 17 is not "substantially the same as Federal Rule [sic] Civil Procedure Rule 45 which states that witnesses can only be subpoened [sic] who are located within 100 miles of the requested hearing for the requested relevant purpose of the court matter." (Compl., docket #1, Page ID#11.) Fed. R. Crim. P. 17 provides that grand a jury subpoena can be served "any place within the United States."

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: May 5, 2014         /s/ Janet T. Neff
                           Janet T. Neff
                           United States District Judge